UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF GULF INLAND CONTRACTORS, INC., AS OWNER AND OPERATOR OF THE M/V BIG HORN AND BARGE CHELSEA A FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION<br><br>No. 22-2453<br><br>SECTION: "J"(4) |

## ORDER & REASONS

Before the Court are Great American Insurance Company ("Great American")'s *Motion for Summary Judgment for Determination of Choice of Law and Application of Joint and Several Liability in Allocation of Fault* **(Rec. Doc. 105)**, Gulf Inland Contractors, Inc. ("Gulf Inland")'s opposition (Rec. Doc. 115), and Great American's reply (Rec. Doc. 119). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that Great American's motion should be **DENIED** for the reasons set forth more fully below.

## FACTS AND PROCEDURAL BACKGROUND

This case arises from an alleged allision between the tug M/V BIG HORN and barge CHELSEA A, owned by Gulf Inland, and the Bayou Terrebonne Miter Gate Lock System ("Lock System" or "Lock"), owned and operated by Terrebonne Parish Consolidated Government ("TPCG") and Terrebonne Levee and Conservation District ("TLCD"). On April 15, 2022, the M/V BIG HORN and barge CHELSEA A was transiting Bayou Terrebonne when it allegedly allided with a section of the Lock

System. Subsequently, Gulf Inland filed a Petition for Exoneration from or Limitation of Liability pursuant to 46 U.S.C. § 30501, *et seq*. Great American, insurers for TPCG, paid TPCG and obtained a subrogation receipt to repair the damaged lock before June 1, 2023. TPCG, TLCD, and Great American (herein, collectively referred to as "Claimants") made claims in Gulf Inland's limitation action. (Rec. Docs. 9, 47).

As part of its defense, Gulf Inland alleges fault—attributable to TPCG, TLCD, Great American, GIS Engineering, LLC ("GIS"), and Sealevel Construction—should eliminate or reduce its liability for damages because (1) of a defect in the design and function of the Lock Structure (Rec. Doc. 85, at 9; Rec. Doc. 85, at 4-5); and (2) that the Lock presented a navigational hazard of which TCPG and its agents were aware and had a duty to notify mariners, but failed to do so. (Rec. Doc. 85, at 10; Rec. Doc. 86, at 5-6). GIS is the entity that designed the Lock Structure. Sealevel Construction is the entity that built the Lock. Gulf Inland has not filed a Third Party Complaint or a Fed. R. Civ. Pro. 14(c) tender against either GIS or Sealevel Construction, even though Gulf Inland had issued two subpoenas' duces tecum to GIS, received GIS's responses, and has taken three depositions of GIS employees–the construction manager and two engineers. (Rec. Doc. 105, at 4).

Great American filed this instant motion for partial summary judgment for a determination of choice of law and application of joint and several liability in allocation of fault.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

## **DISCUSSION**

The issue between the parties is the allocation of fault, specifically the application of maritime principles of comparative fault and the "joint and several" rule relied on by Great American. (Rec. Doc. 115, at 11). The parties disagree whether a portion of fault can be allocated to GIS and Sealevel Construction, "non-parties" to the case.

Great American argues that if Gulf Inland thinks GIS is at fault, then GIS should be made a party to these proceedings. (Rec. Doc. 105, at 10). Gulf Inland counters that neither GIS nor Sealevel Construction need to be made "third-party" defendants for GIS's or Sealevel Construction's fault to exonerate or reduce its liability, because of the application of comparative fault under *Reliable Transfer*. (Rec. Doc. 115, at 7). "Such fault would not be part of a joint and several obligation of Gulf Inland for which it would have to seek contribution." (Rec. Doc. 115, at 24). Thus, Gulf Inland would not be required to bring in the "non-parties" into the proceedings. (Rec. Doc. 115, at 24).

The Court has already held that General Maritime Law governs this case. (Rec. Doc. 153). Therefore, it is well established that, joint tortfeasors are jointly and severally liable for the plaintiff's damages under maritime law. *See Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1116 (5th Cir.1995). Great American argues that the Court's analysis should end there. (Rec. Doc. 119, at 1). To support its argument, Great American cites (1) *Edmonds v. Compagnie Generale Transatlantique* which held that plaintiffs may obtain judgment for the full amount from any and all joint

4

tortfeasors under the doctrine of joint and several liability, *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260 & n. 7 (1979); and (2) *Commonwealth Ins. Co. v. Am. Global Maritime Inc.*, No. 00-868, 2001 WL 333148 (E.D. La. Apr. 4, 2001).

Great American is mistaken that the Court's analysis should stop there. Neither *Edmonds* nor *Commonwealth Ins. Co.* involved a vessel collision, allision, or stranding and thus are inapplicable to this case. Although joint tortfeasors are held jointly and severally liable to a plaintiff, a joint tortfeasor's liability is determined through comparative fault under *Reliable Transfer*. *See McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220 (1994); *United States v. Reliable Transfer Co.*, 412 U.S. 397, 411 (1975).

Next, Great American argues that the doctrine of comparative fault under *Reliable Transfer Co.* is not applicable, because *Reliable Transfer* applies only to collision cases, not allision cases. (Rec. Doc. 119, at 4–5). The Court disagrees. The *Reliable Transfer* Court held:

> [W]hen two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault.

*United States v. Reliable Transfer Co.*, 421 U.S. 397, 411 (1975). In its strict sense, a collision is when a vessel collides with another moving vessel. Thomas J. Schoenbaum, *Admiralty & Maritime Law* § 14–1 (6th ed. 2023). An allision, instead, is when a moving vessel allides or collides with a stationary object such as another vessel, a bridge, a pier, a wharf, or other shore side installation. *Id.* Parties and courts

5

often conflate the different meaning of the two words; however, this Court and other courts have routinely applied *Reliable Transfer* in allision cases. *See e.g., Southern Oil of Louisiana LLC v. Alliance Offshore, LLC*, No. 21-2337, 2024 WL 3873940 (E.D. La. Aug. 20, 2024) (applying *Reliable Transfer* in a case involving vessel allision with a fixed well platform); *In re Complaint of Crosby Tugs, L.L.C.*, No. 02-1125, 2005 WL 7873785 (E.D. La. Jul. 5, 2005) (applying *Reliable Transfer* in a case involving tug allision with a pipeline); *Pierce v. Five B's, Inc.*, No. 07-3263, 2008 WL 4091010 (E.D. La. Aug. 27, 2008) (applying *Reliable Transfer* in a case involving a vessel allision with a stationary vessel); *Pennzoil Producing Co. v. Offshore Exp., Inc.*, 943 F.2d 1465 (5th Cir. 1991) (applying *Reliable Transfer* in a case involving vessel allision with pipeline).

Thus, the Court finds that the doctrine of comparative fault under *Reliable Transfer* applies to the case at hand. *Reliable* Transfer does not require Gulf Inland to make GIS or Sealevel Construction "third-party" defendants for GIS's or Sealevel Construction's fault to exonerate or reduce its liability.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that motion be **DENIED.**

New Orleans, Louisiana, this 16th day of September, 2024.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE