UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF THE
COMPLAINT OF GULF
INLAND CONTRACTORS,
INC., AS OWNER AND
OPERATOR, INC., AS OWNER
AND OPERATOR OF THE M/V
BIG HORN AND BARGE
CHELSEA A FOR
EXONERATION FROM OR
LIMITATION OF LIABILITY

CIVIL ACTION

No. 22-2453

SECTION: "J"(3)

## ORDER & REASONS

Before the Court are Clear Spring Property and Casualty Company ("Clear Spring")'s *Motion to Stay [Discovery] Pending Ruling on Motion to Dismiss Direct Action Claims Against Reinsurers* **(Rec. Doc. 169)**, an opposition thereto by Great American Insurance Company ("Great American") (Rec. Doc. 205), and a reply (Rec. Doc. 214). Clear Spring requested oral argument in accordance with Local Rule 78.1, the Court denied oral argument and informed the parties if it found oral argument necessary, it would advise the parties so. (Rec. Doc. 175).

Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED.**

## FACTS AND PROCEDURAL BACKGROUND

This case arises out of an alleged allision[1] between a vessel and its barge, owned by Gulf Inland Contractors, and the Bayou Terrebonne Miter Gate Lock

---

[1] The Court acknowledges that the parties have been referring to the incident between the M/V Big Horn and the Chelsea A with the mitre gate as "a maritime tort" instead of an allision case.

System, owned by Terrebonne Parish Consolidated Government ("TPCG") and operated by Terrebonne Levee and Conservation District. Gulf Inland subsequently filed a Complaint for Limitation of Liability, pursuant to the 46 U.S.C. § 30501, *et seq*. The Court approved the ad interim stipulation of value for the vessel and barge in the amount of $730,000 and a Letter of Undertaking issued by Clear Spring, Gulf Inland's insurer. (Rec. Doc. 5).

Great American filed a Claim and Answer in Gulf Inland's limitation of liability action as the subrogated property insurer of TPCG. (Rec. Doc. 47). Additionally, Great American filed a Third Party Complaint pursuant to the Louisiana Direct Action Statute, La. R.S. 22:1269, against Clear Spring and Clear Spring's unnamed reinsurers, identified by Great American as "Reinsurers A-Z." (Rec. Doc. 129, at ¶¶ 1, 13).

Great American has been (1) proactively taking steps to avoid the scenario that transpired in *In re Cheramie Marine, L.L.C. and Cheramie Dive Support L.L.C.*, No. 21-cv-2371 (E.D. La. Feb. 20, 2024) (J. Barbier) when the reinsurers were dilatory in paying settlements; and (2) attempting to demonstrate Clear Spring's reinsurance agreements are contracts of liability, not indemnity. (Rec. Doc. 205, at 5–7). *Cheramie Marine* involved a vessel allision that resulted in several personal injury claims and one claim for property damage. *In re Cheramie Marine, L.L.C. and Cheramie Dive Support L.L.C.*, No. 21-cv-2371 (E.D. La. Feb. 20, 2024) (J. Barbier). Like this case here, Clear Spring was involved, as well as Talisman Casualty Insurance Company ("Talisman"). Talisman was the excess carrier. Litigation resulted in settlement,

which involved two payments. The first payment was timely made. However, the

vessel owner did not timely make the second payment, which resulted in increased

damages and sanctions. Payment was late because Talisman's reinsurers were late

in paying the agreed upon settlement. (Rec. Doc. 205, at 4). In a hearing before the

Court, Joseph Marcantel, who identified himself as a consultant for Talisman, stated

that Talisman has been decommissioned; that there was difficulty in obtaining

payment on behalf of their insured (the vessel owner); and that Mr. Marcantel was

pursuing the reinsurers for funds to pay the settlement. (Rec. Doc. 205, at 5).

Great American argues that the *Cheramie* scenario described did not indicate

Clear Spring made any payments to the insured (Rec. Doc. 205, at 5), but instead

contends that Clear Spring is a "fronting"[2] insurance company whereby Clear Spring

was paid a percentage of the premiums for allowing reinsurers to write policies on

Clear Spring paper. (Rec. Doc. 205, at 4). Thus, Clear Spring's reinsurance

---

[2]       Fronting refers to the use of a licensed, admitted insurer, such as Clear Spring, to issue
the insurance policy on behalf of a self-insured organization or captive insurer without
the intention of transferring any of the risk. The risk of loss is retained by the self-
insured or captive insurer with an indemnity or reinsurance agreement. However, the
fronting company (insurer) (here Clear Spring) assumes a critic risk since it would be
required to honor the obligations imposed by the policy if the self-insurer or captive
failed to indemnity it. Fronting companies charge a fee for this service, generally
between 5–10% of the premium being written. Fronting arrangements allow captives
and self-insurers to comply with financial responsibility laws imposed by many states
that require evidence of coverage written by the admitted carrier, such as for
automobile liability and worker's compensation insurance. Fronting arrangements
may also be used in business contracts with organizations, such as leases and
construction contracts, where evidence of coverage through an admitted insurer is also
required.
(Rec. Doc. 204, at 9 n.15) (citation omitted).

agreements would be contracts of liability, not indemnity; allowing Great American to sue Clear Spring's reinsurers directly under the Louisiana Direct Action Statute.[3]

In response to Great American's concern about a potential *Cheramie* scenario, Clear Spring first argues that the transcript of the hearing shows that Talisman was the excess carrier; and that it was Talisman's reinsurers that were slow to pay, not Clear Spring's reinsurers as the case is here. Additionally, the *Cheramie* case involved a different set of policies.

Before this instant motion was filed, Clear Spring filed its first motion to dismiss Great American's direct action claims against its unnamed reinsurers. (Rec. Doc. 135). Disagreeing with Clear Spring's interpretation of controlling caselaw, the Court denied as premature Clear Spring's motion to dismiss because the determinative provisions of the reinsurance agreement were not attached. (Rec. Doc. 165). Since then, Clear Spring filed its second motion to dismiss Great American's direct action claims against its reinsurers. (Rec. Doc. 167). This time Clear Spring attached four redacted reinsuring agreements, alleging that "all contain a provision that explicitly states the reinsurance does not confer any rights to any third parties." (Rec. Doc. 169, at 2). Great American contends that this is not the whole picture, because Clear Spring has not provided the unredacted risk allocation provisions of the reinsurance agreements. (Rec. Doc. 204, at 2). In support of its position, Great

---

[3] Additionally, Great American cites to *The National World War II Museum, Inc. v. Talisman Casualty Ins. Co. LLC,* CA No. 2019-10190, pending in the Civil District Court for the Parish of Orleans, to support its contention that Clear Spring is only a fronting company for Talisman.

American cites to previous testimony describing the Clear Spring-Talisman "fronting" relationship. (*Id.* 3–5).

To further avoid a *Cheramie Marine* scenario, Great American had filed a *Motion to Substitute Security* (Rec. Doc. 152), requesting the court to order Clear Spring to post a corporate surety bond issued by a certified company approved by the U.S. Treasury to be substituted in lieu of Clear Spring's Letter of Undertaking. The Court granted Great American's motion (Rec. Doc. 152) and approved Clear Spring's substituted security (Rec. Doc. 162).

Along with its *Motion to Substitute Security*, Great American also filed a pending *Motion to Compel Responses to Subpoena Duces Tecum* (Rec. Doc. 158) requesting the Court to compel non-party insurance executives as well as Clear Spring to produce the reinsurance agreements of the primary or excess policies issued to Gulf Inland to determine if the reinsurance is solely for indemnifying Clear Spring or if it is actual liability insurance. (Rec. Doc. 158, at 1). Furthermore, Great American is pursuing depositions of non-party insurance executives–Mr. Joseph Marcantel[4] and Jeffrey Schaff[5]–to support its claims against the reinsurers. (Rec. Doc. 204, at 5). Clear Spring has filed a pending *Motion to Quash* both the subpoena duces tecum and the notices of deposition issued to Mr. Marcantel and Mr. Schaff.

---

[4]Mr. Marcantel previously testified in this Court that he was a consultant for Talisman Casualty Insurance LLC. (Ex. F: Deposition of Joseph Marcantel dated September 19, 2023 at pgs. 131–34, WWII Museum v. Talisman CDC 2019-10190).

[5] Mr. Schaff testified that he was the Vice President of Talisman Casualty Insurance Company, LLC. (Ex. D – Deposition of Jeffrey Schaff Nov. 16, 2022 WWII Museum v Talisman CDC 2019-10190).

(Rec. Doc. 181). Both of these pending discovery motions are before Magistrate Judge

Dossier.

All of this brings us to the present motion before the court—Clear Spring's

motion to stay discovery in relation to reinsurance assets.[6] (Rec. Doc. 169). In sum,

Clear Spring argues good cause exists to stay this narrow discovery until after Clear

Spring's *Motion to Dismiss* is ruled upon for the following reasons:

   (a) Great American's discovery seeks disclosure of commercially
       sensitive information to another insurer, when the information is
       wholly irrelevant to claims and defenses in the case for the reasons
       stated in the Motion to Dismiss;

   (b) This discovery into Clear Springs reinsurance assets is more
       appropriately conducted after a judgment against Clear Springs and
       pursuant to Fed. R. Civ. Pro. Rule 69(a)(2) which allows discovery
       into a judgment debtor's assets;

   (c) Judgment debtor asset discovery before any judgment is entered
       against a party is a judicially inefficient and causes undue burden to
       parties and diversion of resources at a time the parties are preparing
       for the trial set for February 24, 2025;

   (d) The subpoenas served on non-parties who are affiliated with Clear
       Spring for the reinsurance information are harassing and unduly
       burdensome.

(Rec. Doc. 169, at 3).

In sum, Defendants respond that Clear Spring has not established good cause

to stay discovery, arguing (1) Clear Spring has been "disingenuous and misleading"

(Rec. Doc. 204, at 4) when it states the relevant reinsurance agreements have been

produced, because an unredacted reinsurance agreement will likely reveal that "100%

---

[6] Clear Spring uses the term "reinsurance assets" because the Louisiana Supreme Court recognized reinsurance is an asset of an insurer. *Arrow Trucking Co. v. Continental Ins. Co.* 465 So. 2d 691 (La. 1985).

of the risk was ceded to various reinsurers"; therefore, making it a contract of liability (Rec. Doc. 205, at 3); (2) the claimed "commercially sensitive documents" that Great American seeks have already been produced in other litigation before the Court; (3) the four reinsuring agreements produced by Clear Spring have been "heavily" redacted (Rec. Doc. 204, at 3); and (4) "the actual reinsurance agreements produced by Clear Spring may not be the pertinent agreements anyway" (Rec. Doc. 205, at 7).

## LEGAL STANDARD

The Court possesses broad discretion to supervise and stay discovery until preliminary questions that may dispose of the case are determined. *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 n.114 (5th Cir. 1990) (citation omitted); *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987). "[T]he Court may stay discovery for 'good cause,' such as a finding that further discovery will impose undue burden or expense without aiding the resolution of the dispositive motions." *Fujita v. United States*, 419 Fed. Appx. 400, 402 (5th Cir. 2011) (citations omitted). Lastly, "[t]he Court has authority to order the exchange of information in managing the action pursuant to its Rule 16 authority." Advisory Committee Notes to 1993 Amendment to Fed. R. Civ. P. 26(a).

## DISCUSSION

The Court does not find that good cause exists to stay discovery pending a ruling on Clear Spring's *Motion to Dismiss Direct Action Claims Against Reinsurers* (Rec. Doc. 169).

First, the Court finds Clear Spring's reliance on the following cases, to support that good cause exists for a motion to stay discovery pending a motion to dismiss, are

distinguishable from the case at hand: *Fedorov v. Portfolio Recovery Assoc's LLC*, 2023 U.S. Dist. LEXIS 211701 (W.D. Tex. 2023); *Primesource Bldg. Prods. v. Lee Grp. Int'l*, No. 19-2878, 2020 U.S. Dist. LEXIS 195681 (N.D. Tex. Aug. 20, 2020); and *Jones v. Westlake US 2 LLC*, No. 23-1311, 2024 WL 58179 (W.D. La. Jan. 3, 2024).

Clear Spring first cites *Fedorov v. Portfolio Recovery Assoc's LLC* to support its position, however, Clear Spring failed to perform any analysis or comparison of *Fedorov* to the present case. In fact, Clear Spring only put forth two statements of fact: (1) "the defendant filed a motion to dismiss plaintiff's entire complaint arguing plaintiff had not stated a claim against it. . ." and (2) "[t]he defendant then filed a motion to stay discovery on the basis the complaint failed to allege a violation of any of the relevant federal statutes. . ." (Rec. Doc. 169, at 4). Upon its own analysis, the Court finds this case distinguishable. The *Federov* court found it was unclear how discovery would uncover the Defendant's wrongful and illegal conduct. *Fedorov*, 2023 U.S. Dist. LEXIS 211701, at *3. Unlike the Plaintiff in *Fedorov* who could not state how discovery would uncover Defendant's liability, Great American has stated specifically how discovery would uncover its claim that Clear Spring's reinsurers may be liable under the direct action statute.

In *Primesource Bldg. Prods.*, the court agreed with the Defendants to stay discovery because the Defendants' dispositive motion was strong and the Plaintiff's discovery requests were overbroad and unduly burdensome. *Primesource Bldg. Prods.*, 2020 U.S. Dist. LEXIS 195681, at *3. Unlike the strong dispositive motion to dismiss in *Primesource*, the Court finds that both sides put forth compelling

arguments regarding Clear Spring's motion to dismiss Great American's direct action claims against Clear Spring's reinsurers. Additionally, unlike the overboard production requests, Great American is seeking to determine whether Clear Spring's reinsurances agreements are contracts of indemnity or liability. Great American has stated in its oppositions to Clear Spring's first and second motions to dismiss as well as this instant motion to stay, the specific documents it needs to be fully apprised of its claims against the reinsurers. (Rec. Docs. 141, 167, 169).

Regarding Clear Spring's reference to *Jones v. Westlake US 2 LLC*, the Court finds this case distinguishable. Unlike the instant suit, *Jones* involved a class action. *Jones*, 2024 WL 58179, at *1. The class was comprised of immovable property owners against Defendant manufacturers whose operations allegedly contaminated an aquifer. *Id.* at *1. The *Jones* court found good cause existed because discovery in the matter would be substantial; the class of the plaintiffs would be large; the determination of causation and damages would be complex and costly; and that the plaintiffs did not articulate any prejudice that would suffer if discovery was stayed. *Id.* at *3. Unlike the *Jones*, this matter does not involve a class action. Likewise, the issue of causation and damages is not nearly as complex as in *Jones*.

Next, the Court finds there are other reasons to permit discovery into Clear Spring's reinsurance agreements. The discovery sought by Great American is relevant to its claims against Clear Spring's reinsurers under the Louisiana Direct Action Statute. The reinsurance agreements, depositions, and subpoena duces tecum are particularly relevant, as they may help establish whether Clear Spring or the

reinsurers are potentially liable or have a financial responsibility for Great American's claims. Lastly, given its previous familiarity with both Clear Spring and Talisman, the Court finds these unique circumstances warrant a denial a motion to stay discovery regarding reinsurance agreements.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motion is **DENIED**.

**IT IS FURTHER ORDERED** that Magistrate Judge Dossier may review the scope of the requested discovery.

New Orleans, Louisiana, this 14th day of November, 2024.


_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE