UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF GULF INLAND CONTRACTORS, INC., AS OWNER AND OPERATOR, INC., AS OWNER AND OPERATOR OF THE M/V BIG HORN AND BARGE CHELSEA A FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION<br><br>No. 22-2453<br><br>SECTION: "J"(3) |

## ORDER & REASONS

Before the Court are Clear Spring Property and Casualty Company ("Clear Spring")'s second *Motion to Dismiss Direct Action Claims Against Unnamed Reinsurers Asserted in Great American Ins. Co.'s Third Party Complaint* **(Rec. Doc. 167)**, an opposition thereto by Great American Insurance Company ("Great American") (Rec. Doc. 204), and a reply (Rec. Doc. 212). Clear Spring requested oral argument in accordance with Local Rule 78.1, the Court denied oral argument and informed the parties if it found oral argument necessary, it would advise the parties so. (Rec. Doc. 175).

Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED without prejudice.**

## FACTS AND PROCEDURAL BACKGROUND

This case arises out of an alleged allision[1] between a vessel and its barge, owned by Gulf Inland Contractors, and the Bayou Terrebonne Miter Gate Lock System, owned by Terrebonne Parish Consolidated Government ("TPCG") and operated by Terrebonne Levee and Conservation District ("TLCD"). Gulf Inland subsequently filed a Complaint for Limitation of Liability, pursuant to the 46 U.S.C. § 30501, *et seq*. The Court approved the ad interim stipulation of value for the vessel and barge in the amount of $730,000 and a Letter of Undertaking issued by Clear Spring, Gulf Inland's insurer. (Rec. Doc. 5).

Great American filed a Claim and Answer in Gulf Inland's limitation of liability action as the subrogated property insurer of TPCG. (Rec. Doc. 47). Additionally, Great American filed a Third Party Complaint pursuant to the Louisiana Direct Action Statute, La. R.S. § 22:1269, against Clear Spring and Clear Spring's unnamed reinsurers, identified by Great American as "Reinsurers A-Z." (Rec. Doc. 129, at ¶¶ 1, 13).

Previously, Clear Spring filed its first motion to dismiss Great American's direct action claims against its unnamed reinsurers. (Rec. Doc. 135). Disagreeing with Clear Spring's interpretation of controlling caselaw, the Court denied as premature Clear Spring's motion to dismiss because the determinative provisions of the reinsurance agreement were not attached. (Rec. Doc. 165). Six days after the Court's denial of its motion, Clear Spring filed its second motion to dismiss Great

---

[1] The Court acknowledges that the parties have been referring to the incident between the M/V Big Horn and the Chelsea A with the mitre gate as "a maritime tort" instead of an allision case.

American's direct action claims against its reinsurers. (Rec. Doc. 167). This time Clear Spring filed, under seal, four redacted reinsuring agreements, alleging that "all contain a provision that explicitly states the reinsurance does not confer any rights to any third parties." (Rec. Doc. 169, at 2). Clear Spring directs the Court's attention to the following pertinent reinsuring language:

Reinsuring Agreement A reads:

1.     REINSURANCE CLAUSE
1.1 In consideration of the premium to be paid to reinsurers by or on behalf of the reinsured, the reinsurers hereon shall reimburse the reinsured to the extent that its Net Loss (as defined in Clause 2 below) under business reinsured by this Contract exceeds the Reinsured's retention but only up to the limit of reimbursement. Such business is as fully described in the Risk Details which form an integral part of this Contract.

Reinsuring Agreement B reads:

1.     REINSURANCE CLAUSE
1.1 In consideration of the premium to be paid to reinsurers by or on behalf of the reinsured, the reinsurers hereon shall reimburse the reinsured to the extent that its Net Loss (as defined in Clause 2 below) under business reinsured by this Contract exceeds the Reinsured's retention but only up to the limit of reimbursement. Such business is as fully described in the Risk Details which form an integral part of this Contract.

Reinsuring Agreement C reads:

1.     REINSURANCE CLAUSE
1.1 In consideration of the premium to be paid to reinsurers by or on behalf of the reinsured, the reinsurers hereon shall reimburse the reinsured to the extent that its Net Loss (as defined in Clause 2 below) under business reinsured by this Contract exceeds the Reinsured's retention but only up to the limit of reimbursement. Such business is as fully described in the Risk Details which form an integral part of this Contract.

Reinsuring Agreement D reads:

1.     REINSURANCE CLAUSE

1.1 In consideration of the premium to be paid to reinsurers by or on behalf of the reinsured, the reinsurers hereon shall reimburse the reinsured to the extent that its Net Loss (as defined in Clause 2 below) under business reinsured by this Contract exceeds the reinsured's retention but only up to the limit of reimbursement. Such business is as fully described in the Risk Details which form an integral part of this Contract.

(Rec. Doc. 167-2, at 3–4).

Great American contends that this is not the whole picture. Great American purports Clear Spring has not provided the unredacted risk allocation provisions of the reinsurance agreements, (Rec. Doc. 204, at 2); and that further discovery will reveal Clear Spring is only a "fronting company"[2] and that the reinsurers will likely pay any forthcoming settlement or judgment (Rec. Doc. 204, at 4). Thus, Clear Spring's reinsurance agreement would be a contract of liability, not indemnity,

---

[2] Fronting refers to the use of a licensed, admitted insurer, such as Clear Spring, to issue the insurance policy on behalf of a self-insured organization or captive insurer without the intention of transferring any of the risk. The risk of loss is retained by the self-insured or captive insurer with an indemnity or reinsurance agreement. However, the fronting company (insurer) (here Clear Spring) assumes a critic risk since it would be required to honor the obligations imposed by the policy if the self-insurer or captive failed to indemnity it. Fronting companies charge a fee for this service, generally between 5–10% of the premium being written. Fronting arrangements allow captives and self-insurers to comply with financial responsibility laws imposed by many states that require evidence of coverage written by the admitted carrier, such as for automobile liability and worker's compensation insurance. Fronting arrangements may also be used in business contracts with organizations, such as leases and construction contracts, where evidence of coverage through an admitted insurer is also required.

(Rec. Doc. 204, at 9) (citation omitted).

making the Louisiana Direct Action Statute applicable against Clear Spring's reinsurers.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## DISCUSSION

The determination of whether Great American can name Clear Spring's reinsurers pursuant Louisiana's Direct Action Statute is dependent on whether Clear Spring's reinsurance agreements with its reinsurers are contracts of indemnity or contacts of liability.

5

Generally, an insured or a substantive third party beneficiary may not sue an insurer's reinsurers directly under the Louisiana Direct Action Statute, La. R.S. § 22:1269. *See Arrow Trucking Co. v. Continental Ins. Co.*, 465 So. 2d 691, 692 (La. 1985). However, an insured may directly sue an insurer's reinsurers pursuant La. R.S. § 22:1269 when the reinsurance agreement is a contract for liability, rather than for loss (*i.e.,* indemnity). *Id.* at 698. The *Arrow Trucking Co.* court stated

> [I]f the reinsurance contract reflects the reinsurer's intent to become directly obligated to the original insured (as is often the case with a reinsurer taking over the policies and assets of an insolvent insurer), then the original insured may pursue his action directly against the reinsurer.

*Id.* at 695.

Thus, if there is language in a reinsurance agreement indicating that the reinsurer agreed "to assume and carry out directly with the policyholder any of the policy obligations of the ceding insurer" then the reinsurance agreement is one of liability. *Id.* at 701. "The provisions of the reinsurance agreement are of course critical to a determination of the parties' rights under the agreement." *Id.* at 697.

Drawing all reasonable assumptions in favor of the non-moving party, the Court finds Clear Spring's motion to dismiss should be denied at this time. Although Clear Spring has provided that the reinsurance agreements contain a provision barring third-party claims, Great American has put forth a compelling argument that this is not the complete structure of Clear Spring's reinsurance, and that Clear Spring is possibly acting as a "fronting" insurance company. In a fronting arrangement, the insurer may issue policies on behalf of another company but retain limited or no

actual risk. This type of structure raises questions regarding the nature of Clear Spring's role and whether it is the true party responsible for the policies' obligations. Furthermore, the risk allocations associated with the reinsurance agreements have been redacted, which leaves the Court and Great American without a complete understanding of the underlying risk allocation arrangement.

Great American's allegations that Clear Spring is functioning as a fronting company, with the actual risk being transferred to its reinsurers, are sufficient to suggest that the reinsurance agreement may not operate as Clear Spring claims. These factual issues, including the full scope of the reinsurance structure and Clear Spring's role require denial of this instant motion. As such it would be premature to dismiss Great American's claims against Clear Spring's reinsurers at this stage.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motion is **DENIED without prejudice**.

New Orleans, Louisiana, this 18th day of November, 2024.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE