UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF THE                        CIVIL ACTION
COMPLAINT OF GULF INLAND
CONTRACTORS, INC., AS                       No. 22-2453
OWNER AND OPERATOR OF
THE M/V BIG HORN AND                        SECTION: "J"(3)
BARGE CHELSEA A FOR
EXONERATION FROM OR
LIMITATION OF LIABILITY

## ORDER & REASONS

Before the Court are Gulf Inland's *Motion for Summary Judgment on Statutory and Permit Violation by Southwest Guidewall of Bayou Terrebonne Lock Not Allowed by USACE Permit* **(Rec. Doc. 180)**, and Terrebonne Parish Consolidated Government ("TPCG") and Great American Insurance Company ("GreatAmerican" (hereinafter referred to collectively as "Claimants")'s opposition thereto (Rec. Doc. 203), and a reply (Rec. Doc. 223). Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED.**

## FACTS AND PROCEDURAL BACKGROUND

This Court has previously set out the facts of the case in Record Document 216 and provides only the facts relevant to this instant motion. On April 15, 2022 the tug Big Horn and the barge Chelsea A were transiting the Bayou Terrebonne. The barge made at least two contacts with the Bayou Terrebonne Lock ("BT Lock") on both the port and starboard side. The BT Lock has a wooden fender system as well as a

concrete structure or guidewall. The southeast side of the barge first made contact with the concrete guidewall ("Southeast Guidewall").

The BT Lock is owned by TPCG. When constructing the BT Lock, a U.S. Army Corps of Engineers ("USACE") permit was issued to TPCG and stated TPCG was permitted to "Install and maintain a floodgate/navigational lock structure in Bayou Terrebonne, in accordance with the drawings attached in nine sheets, dated January 11, 2019." (Rec. Doc. 180-3, at 4).  The permit drawings incorporated into the permit did not include the Southeast Guidewall but did include "a protection dolphin at the southeast corner of the lock structure." (Rec. Doc. 203, at 7) Additionally, the USACE permit required "As Built" plans to be submitted within 60 days of completion of the project, but the "As Built" plans were not submitted to the USACE in relation to the BT Lock. (Rec. Doc. 180-3, at Line 18).

 Therefore, Gulf Inland moves for summary judgment, seeking "a ruling that the [S]outheast [G]uidewall was an unpermitted obstruction to navigation in violation of the Rivers and Harbors Act[, 33 U.S.C. § 403,] and therefore the claims arising from the alleged damage to the marine structure as a matter of General Maritime law are presumed to have been caused by the statutory violation as a result of the application of the '*Pennsylvania* Rule.'" (Rec. Doc. 180-2, at 1).

In response, the Claimants argue a question of material fact exists as to (1) whether Bayou Terrebonne is navigable waters of the United States and whether The Rivers and Harbor Act, 33 U.S.C. § 403 applies; (2) whether there was a violation of a statute or regulation; (3) whether the injury suffered was of a nature that the

statute or regulation was intended to prevent (Rec. Doc. 203, at 7); and (4) whether the Southeast Guidewall was an obstruction, and if so, whether it was the proximate cause of the incident.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264–65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its

own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

## DISCUSSION

The Court finds that there is an issue of material fact of whether the Southeast Guidewall was in violation of the USACE permit; and whether the Southeast Guidewall was an obstruction to navigation. In finding this issue of material fact, the Court does not address the Claimants' other arguments in its opposition.

Section 403 of the Rivers and Harbors Act prohibits obstructions, not authorized by Congress, on navigable waters of the United States. 33 U.S.C. § 403. A structure, on a navigable water of the United States, without a permit from Army Corps of Engineers is in violation of the Rivers and Harbors Act. *See id.*

This violation invokes the *Pennsylvania* Rule. *See In re Marquette Transp. Co. LLC*, 292 F. Supp. 3d 719 (E.D. La. 2018). The *Pennsylvania* Rule imposes a presumption of causation on a vessel involved in an allision or collision if the vessel was in actual violation of a statutory or regulatory rule that is intended to prevent such incidents. *The Pennsylvania*, 86 U.S. 125, 136 (1873); *see also Petro United Terminals, Inc. v. J.O. Odfjell Chem. Carriers*, 756 F. Supp. 269, 274 (E.D. La. 1991). A plaintiff must establish three elements for the *Pennsylvania* Rule to apply: "(1) proof by a preponderance of the evidence of violation of a statute or regulation that imposes a mandatory duty; (2) the statute or regulation must involve marine safety or navigation; and (3) the injury suffered must be of a nature that the statute or

regulation was intended to prevent." *Folkstone Maritime, Ltd. V. CSX Corp.*, 64 F.3 1037, 1047 (7th Cir. 1995).

Here, Gulf Inland's argument that TPCG violated its USACE permit rest entirely on the basis that the Southeast Guidewall was not on the nine pages of drawings submitted to USACE to obtain a permit to build the BT Lock. In support, Gulf Inland cites to testimony of Mr. Mohan Menon, the Director of Environmental Services for GIS Engineering, LLC. Mr. Menon obtained the USACE permit for TPCG during construction of the BT Lock and admitted in his deposition that the Southeast Guidewall was not depicted on the drawings submitted to the USACE. Thus, Gulf Inland argues there is no issue or material fact that the permit issued by the USACE for the BT Lock did not include the Southeast Guidewall; therefore, the structure the was not permitted by the USACE and in violation of 33 U.S.C. § 403, invoking the *Pennsylvania* Rule. (Rec. Doc. 180-5, at 5).

In response, the Claimants argue the Southeast Guidewall was not in violation of any statutes because it is a part of the fender system and was not outside the "footprint" of the project submitted to the USACE. In support of its position, Claimants cite to other portions of Mr. Menon's deposition; Jason Chavin's affidavit, the Claimant's retained engineering expert; and Larry Dupre's delcaration, the GIS Engineer of the Bayou Terrebonne project.

Mr. Menon testified to the following:

If we feel that any changes that we are proposing exceeds the project footprint, outside the project footprint, or if it impacts any natural resources, like wetlands, or any other natural resources, for that matter,

that's when we go and try to submit the changes to the Corps, as well as
to DNR, for a modification.

(Rec. Doc. 203, at 5). Additionally, Mr. Menon explained his meaning of the term

footprint includes "the outline of the project features. . . all the chamber, chamber

wall, the opening gate, etc." (Rec. Doc. 203, at 5).

> In his affidavit, Mr. Chavin states:

> Upon review of both the permit drawings and as-built drawings
> package, one difference observed between the two (2) sets of drawings is
> the change from a cellular dolphin to a timber fender within the lock
> chamber of the northeast corner of the existing sector gage and at the
> southeast corner of the proposed miter gate.

> It is assumed that the design was changed from a cellular dolphin to a
> timber fender at these two (2) locations (southeast corner of the proposed
> miter gate and the northeast corner of the existing sector gate) between
> the time the permit drawings were submitted and before the sealed
> Approved for Construction drawings were submitted to the contractor.

(Rec. Doc. 203, at 6). Lastly, Mr. Dupre states in his declaration the following:

> Regarding the assertion of Gulf Inland that the 'southeast guidewall'
> (properly referred to as fender system) of the Bayou Terrebonne Lock
> was an 'unpermitted' obstruction to navigation, it has been noted in a
> previous deposition by Mohan Menon that the original USACE permit
> issued to TPCG did not indicate the fender wall in question to the permit
> drawings. It is not uncommon, however, for plans issued for construction
> to be different tha[n] the plans that were issued for permit purposes.

> The southeast fender wall was added to the plans during the design
> process and this feature was on the plans issued for bids for this project.
> The fender wall was added as a safety feature to provide further
> protection to the lock structure form impact by marine vessels that were
> traveling through the lock channel. It should be noted that the original
> permit drawings showed a protection dolphin at the southeast corner of
> the lock structure; the fender wall was simply substituted in place of the
> dolphin and serves the same purpose as the dolphin. The addition of the
> southeast fender wall in no way contradicts the original intention of the
> permit issued by the USACE and the fender wall is a recognized "as-
> built" feature of the project.

(Rec. Doc. 203, at 7). Given the competing testimony propounded by the parties, the Court finds that there is a genuine issue of material fact over whether the Southeast Guidewall was in violation of its USACE permit. Furthermore, the Court finds there is a genuine issue of material fact as to whether the Southeast Guidewall is an "obstruction" to the navigable waters of the United States.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motion is **DENIED**.

New Orleans, Louisiana, this 9th day of December, 2024.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE